UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PERCY JASPER,

       Plaintiff,

v.                                             Case No:  8:16-cv-727-T-23AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the termination of his Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, it is recommended that the Commissioner's decision be reversed and remanded.

**I.**

**A.   Procedural Background**

In a prior decision, dated November 21, 2006, Plaintiff was found disabled as of September 18, 2003, and subsequently awarded SSI benefits (Tr. 78-82, 132-51).[1]  On August 24, 2012, however, the Social Security Administration ("SSA") determined that Plaintiff's medical condition improved such that Plaintiff was no longer disabled as of that date (Tr. 83-90).  Plaintiff requested reconsideration of the Commissioner's August 24, 2012 decision (Tr. 91-92).  Subsequently, the Office of Disability Determinations held an informal hearing (*see*

---

[1] In the record, the prior decision is referred to as the "comparison point decision" or "CPD" and will therefore be referred to as "CPD" herein (*see, e.g.,* Tr. 22).

Tr. 94-95, 107-18). Following the hearing, the hearing officer concluded that Plaintiff experienced medical improvement and was therefore no longer disabled (Tr. 98-123).

Plaintiff then requested an administrative hearing before an ALJ (Tr. 124). Per Plaintiff's request, the ALJ held a hearing, which was postponed to allow Plaintiff to obtain a representative (Tr. 72-77, 179). The ALJ conducted a second hearing, at which Plaintiff appeared with a representative and testified (Tr. 36-71). Following the hearing, the ALJ issued an unfavorable decision on August 22, 2014, finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 18-35). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-4, 15-17). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Plaintiff, who was born in 1962, was found disabled as of September 18, 2003 (Tr. 78-82, 253). In making that finding, the prior ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 18, 2003, the date Plaintiff filed his application for SSI (Tr. 80). Upon review of the record, the prior ALJ concluded that Plaintiff had multiple severe impairments, including marrow replacing lesions throughout the thoracic spine, hypertension, and diabetes mellitus, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Supbart P, Appendix 1 (Tr. 80). After considering the evidence of record, the prior ALJ concluded that Plaintiff maintained the residual functional capacity ("RFC") to perform less than the full range of sedentary work such that Plaintiff was unable to perform any regular and sustained work activity in a competitive work environment (Tr. 80). The prior ALJ then concluded that Plaintiff could not perform any past relevant work, and, considering

2

Plaintiff's age, education, work experience, and RFC, determined that no jobs existed in significant numbers in the national economy that Plaintiff could perform (Tr. 81-82). Accordingly, the prior ALJ found that Plaintiff had been under a disability from September 18, 2003, through the date of the decision, or November 21, 2006 (Tr. 82).

Subsequently, in August 2012, the SSA determined that Plaintiff experienced medical improvement and therefore that Plaintiff was no longer disabled as of August 24, 2012 (Tr. 83-90). That decision was upheld on reconsideration (Tr. 98-123), following which Plaintiff sought review by an ALJ (Tr. 124). After conducting a hearing and considering the evidence of record, the ALJ issued an administrative decision upholding the cessation of Plaintiff's SSI benefits (Tr. 18-35). In rendering the administrative decision, the ALJ noted that, at the time of the CPD, Plaintiff had the following severe impairments: marrow replacing lesions throughout the thoracic spine, hypertension, and diabetes mellitus, which were found to result in the RFC to perform less than the full range of sedentary work, as Plaintiff was unable to perform any regular and sustained work activity in a competitive work environment (Tr. 23). Upon review of the evidence of record, the ALJ found that the medical evidence established that, as of August 24, 2012, Plaintiff had the following medically determinable impairments: degenerative disc disease, diabetes mellitus, and hypertension (Tr. 23). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments since August 24, 2012, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23). The ALJ then concluded that Plaintiff attained medical improvement as of August 24, 2012, such that the impairments present at the time of the CPD had decreased in medical severity to the point where Plaintiff retained the RFC to perform light work with the following restrictions: occasional foot control operation with both feet and sitting for one hour and then standing for

thirty minutes through a work period (Tr. 23). In considering Plaintiff's medical improvement, the ALJ determined that it was related to Plaintiff's ability to work because it resulted in an increase in Plaintiff's RFC (Tr. 24).

The ALJ then determined that Plaintiff continued to have a severe impairment or combination of impairments beginning on August 24, 2012 (Tr. 24). Beginning on that date, and based on the impairments as of that date, the ALJ determined that Plaintiff maintained the RFC to perform light work, except with occasional foot control operation with both feet; frequent handling of objects, meaning gross manipulation with both hands; frequent fingering, meaning fine manipulation with both hands; and sitting for one hour and then standing for thirty minutes through the work period (Tr. 24). Given Plaintiff's impairments and RFC, the ALJ found that, beginning on August 24, 2012, Plaintiff was unable to perform his past work as a landscape worker (Tr. 29). Notwithstanding, the ALJ determined that, beginning on August 24, 2012, considering Plaintiff's age, education, work experience, and RFC based on the current impairments, Plaintiff had been able to perform a significant number of jobs existing in the national economy, such as a cashier, assembler, and sub assembler (Tr. 29-30). Accordingly, the ALJ concluded that Plaintiff's disability ended on August 24, 2012, and Plaintiff had not become disabled again since that date (Tr. 30).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920. The regulations also establish a sequential evaluation process to determine whether a claimant's disability continues. 20 C.F.R. § 416.994(b)(5). Under this process, the ALJ must determine, in sequence, the following:

(1) whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(2) if the claimant does not have such impairment or combination of impairments, whether there has been medical improvement;[2]

(3) if the claimant experienced medical improvement, whether such medical improvement is related to the claimant's ability to perform work, *i.e.*, whether or not there has been an increase in the RFC based on the impairment(s) that was present at the time of the most recent favorable medical determination;[3]

(4) whether an exception applies to a finding of no medical improvement or to a finding that medical improvement was not related to the claimant's ability to work;

(5) whether the claimant has a severe impairment;

(6) if a severe impairment exists, whether the claimant can perform substantial gainful activity such that the claimant can perform his or her past relevant work;

---

[2] Medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). If medical improvement occurred, as demonstrated by a decrease in medical severity, the analysis proceeds to step three, while, if no decrease in medical severity occurs, there is no medical improvement. 20 C.F.R. § 416.994(b)(5)(ii).

[3] If medical improvement is not related to the ability to work, the analysis proceeds to step four, but, if medical improvement is related to the ability to work, the analysis proceeds to step five. 20 C.F.R. § 416.994(b)(5)(iii).

>   (7)  if unable to perform past relevant work, whether the claimant can perform other work

20 C.F.R. § 416.994(b)(5)(i)-(vii).

A determination by the Commissioner must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002)(*per curiam*).

### III.

Plaintiff argues here that the ALJ erred by improperly determining that Plaintiff experienced medical improvement and improperly considering Plaintiff's noncompliance with treatment.  For the reasons that follow, the ALJ failed to apply the correct legal standards with

6

respect to Plaintiff's purported medical improvement, and the decision of the Commissioner should therefore be reversed and remanded.

### A.      Medical Improvement

In a cursory, one-paragraph argument, Plaintiff contends that the ALJ failed to properly determine that Plaintiff experienced medical improvement because the ALJ failed to discuss the original medical evidence associated with the CPD or to compare such evidence with the new medical evidence. The Commissioner argues that, though the ALJ must compare the original medical evidence and the new medical evidence to establish a finding of medical improvement, the ALJ's failure to discuss the original medical evidence does not constitute harmful error. According to the Commissioner, the ALJ must simply consider the prior medical evidence in rendering a decision of medical improvement but not explicitly mention such evidence.

"An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his ability to work, and the claimant is now able to engage in substantial gainful activity." *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012) (*per curiam*) (citations omitted); *see* 20 C.F.R. § 416.994. As noted above, medical improvement means any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). The conclusion that a decrease in medical severity exists must be based upon improvements in a claimant's symptoms, signs, or laboratory findings associated with the claimant's impairment(s). 20 C.F.R. § 416.994(b)(1). "To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with the new medical evidence."

7

*Gombash v. Comm'r, Soc. Sec. Admin.*, 566 F. App'x 857, 859 (11th Cir. 2014) (citation omitted).  In fact, "a comparison of the original medical evidence and the new medical evidence is *necessary* to make a finding of medical improvement."  *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984) (*per curiam*) (emphasis added) (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)).  Without such comparison, no adequate finding of medical improvement can occur.  *Vaughn*, 727 F.2d at 1043.  Indeed, the failure to make such comparison requires reversal and remand for application of the proper legal standard.  *Id.*; *see Klaes*, 499 F. App'x at 896 (citing *Vaughn* and noting that, if the ALJ fails to evaluate the prior medical evidence and make the comparison to the new medical evidence, courts must reverse and remand for application of the proper legal standard).

In this instance, the ALJ failed to engage in the proper comparison of the original medical evidence and new medical evidence (*see* Tr. 22-39).  The ALJ's mere reference to the CPD in setting forth her findings does not equate to the comparison of the original medical evidence and the new medical evidence required to make a finding of medical improvement.  *See Freeman*, 739 F.2d at 566.  Nowhere in her decision does the ALJ attempt to engage in a comparison of the old and new medical evidence.  Despite the Commissioner's contentions to the contrary, such omission was harmful and requires reversal and remand for application of the proper legal standards.  *Vaughn*, 727 F.2d at 1043; *Klaes*, 499 F. App'x at 896.  Accordingly, given that the ALJ's decision did not apply the proper legal standards, it is recommended that the decision of the Commissioner be reversed and remanded for further administrative proceedings to apply the proper legal standards in determining whether Plaintiff experienced medical improvement.

### B.     Noncompliance with Treatment

Additionally, in another cursory, one-paragraph argument, Plaintiff contends that the ALJ improperly considered Plaintiff's noncompliance with treatment in determining that Plaintiff experienced medical improvement. According to Plaintiff, the ALJ erred because an ALJ may only deny benefits on the basis of noncompliance with treatment where compliance would restore the claimant's ability to work. Unlike Plaintiff's prior argument, however, this argument lacks merit.

Under 20 C.F.R. § 416.930, to receive benefits, a claimant must follow treatment prescribed by his or her physician if the treatment could restore the claimant's ability to work. 20 C.F.R. § 416.930(a); *see Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored."). If, however, a claimant who already receives benefits does not follow the prescribed treatment without a good reason, the SSA will stop paying the claimant benefits. 20 C.F.R. § 416.930(b). Here, as the record indicates, Plaintiff did not establish a good reason for his failure to follow prescribed treatment. During the 2014 administrative hearing, Plaintiff stated that one instance of his noncompliance with medication stemmed from the failure of his doctor's office to respond to the pharmacy to refill medication (Tr. 58-59). Plaintiff also stated that he experienced an adverse side effect from a medication called Metformin so would forego use of Metformin for weeks at a time (Tr. 28, 59). Lastly, Plaintiff testified that he received a machine to assist with his sleep apnea that did not work properly, and he could not afford the bill for resetting the machine, so he had not used a machine for years to assist with his sleep apnea but intended on talking to the doctor about obtaining a machine covered by his insurance (Tr. 59-60). In rendering her decision, the ALJ addressed these bases for Plaintiff's

9

noncompliance and appropriately noted that Plaintiff did not attempt to find low- or no-cost measures to assist with prescription or equipment procurement (Tr. 28). Beyond that, the record does not reflect that Plaintiff sought alternative medication with less severe side effects rather than simply failing to take his medication as prescribed.

Furthermore, unless the ALJ's decision is based significantly upon the claimant's noncompliance with treatment, the ALJ's consideration of the noncompliance will not constitute reversible error. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x. 483, 487 (11th Cir. 2012) (*per curiam*) ("Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits.); *see Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (*per curiam*) (determining that the ALJ's finding that the plaintiff was not disabled was not significantly based upon a finding of noncompliance, the ALJ's consideration of noncompliance as a factor in discrediting the plaintiff's allegations of disability was supported by other evidence of record, and the ALJ's decision was based primarily on facts other than the noncompliance such that substantial evidence supported the ALJ's decision). In this instance, the ALJ did not rely solely or even significantly upon Plaintiff's noncompliance with treatment. Instead, the ALJ considered the noncompliance, in conjunction with the medical records, opinion evidence, and testimony (Tr. 21-30). For example, in discussing the medical records, the ALJ referenced Plaintiff's failure to seek treatment with Dr. Saba for a period of more than six months from November 2011 to June 2012 and failure to follow up as directed and noted that Plaintiff's treatment included extensive gaps (Tr. 25-26, 28). Later, the ALJ stated the following:

> Most of the claimant's treatment revolved around diabetes and hypertension. During this time, his blood pressure was consistently high, yet he refused all treatment. He did take Metformin, but went weeks at a time without taking it due to side effects. In order to receive benefits, a claimant must follow treatment

>  as prescribed by their treating physician if this treatment can restore the claimant's ability to work (20 CFR 416.930(a)).  Furthermore, absent good reason, the claimant may be found not disabled for failure to comply with prescribed treatment (20 CFR 416.930(b)).  Although at least some of this noncompliance was due to insurance issues, there is no evidence that he sought low- or no-cost measures, such as charity assistance, generic prescriptions, or prescription drug plans such as those provided by department stores and pharmacy chains.  Although it is not the primary basis for the decision in this case, the claimant's failure to follow prescribed treatment without a good reason is a basis for finding the claimant is not disabled.
>
>  As noted above, the claimant's treatment included extensive gaps.  Prior to his denial date, there was a two-year treatment gap between late 2009 (Ex. B18F at 2) and late 2011 (Ex. B5F at 5-6).  There was also a six-month treatment gap in the period leading up to August 24, 2012.  This is inconsistent with the alleged severity of his functional limitations and diminishes the credibility of those allegations.

(Tr. 28).  As articulated by the ALJ, and as the decision indicates, Plaintiff's noncompliance with treatment and Plaintiff's treatment gaps did not form the primary basis for the ALJ's decision (*see* Tr. 21-30).  Rather, the ALJ appropriately considered the noncompliance as one factor weighing against a finding that Plaintiff continued to be disabled at the time of the ALJ's decision.  Given the ALJ's proper consideration of the evidence taken as a whole, the ALJ's consideration of Plaintiff's noncompliance does not constitute reversible error.  *See Beegle*, 482 F. App'x. at 487; *see Ellison*, 355 F.3d at 1275.

Regardless, as the Commissioner contends, the ALJ may consider noncompliance as one of many factors in assessing a claimant's subjective complaints.  *See* 20 C.F.R. 416.929(c)(3); *see also* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *7 (Jul. 2, 1996) ("On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no

good reasons for this failure").[4]  In this instance, the ALJ discussed Plaintiff's noncompliance in considering Plaintiff's subjective complaints (Tr. 25-28).  Indeed, the ALJ correctly considered Plaintiff's noncompliance in determining that, though Plaintiff's current medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment (Tr. 25-28).  *See* 20 C.F.R. 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *7.  Based on the foregoing, therefore, the ALJ did not err in considering Plaintiff's noncompliance.

## IV.

For the foregoing reasons, it is hereby

RECOMMENDED:

  1.  The decision of the Commissioner be REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings to apply the proper legal standards in determining whether Plaintiff experienced medical improvement.

  2.  The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

---

[4] As noted by the parties, subsequent to the ALJ's decision, SSR 96-7p was superseded by SSR 16-3p.

IT IS SO REPORTED in Tampa, Florida, on this 31st day of January, 2017.

ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

cc:   Hon. Steven D. Merryday
      Counsel of Record